UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| JERMAINE DODD, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | NO. 2:04-CV-304 PS |
| vs. | ) | |
| | ) | |
| STAN KNIGHT, | ) | |
| | ) | |
| Respondent. | ) | |

**OPINION AND ORDER**

Jermaine Dodd was convicted of murder in Lake County, Indiana and then told anyone

who was willing to listen that he wanted his case appealed.  His appointed appellate lawyer

advised the Indiana Court of Appeals that Dodd had a number of viable appellate issues.

However, the lawyer first wanted to have the case sent back to the trial court so that he could

develop the record for a potential claim of ineffective assistance of trial counsel, a process that is

allowed under Indiana law.  The implication was that if he did not prevail on the ineffective

assistance of counsel claim, then *all* of the issues – the direct appeal issues and the appeal of the

ineffective assistance claim – would be pressed in a consolidated appeal.  The problem is that

when the appellate lawyer lost in the trial court on the ineffective assistance claim, the only thing

he appealed was the denial of that claim; he jettisoned all other issues – including the claims of

trial error that he previously said had merit.  What this has meant is that the Indiana Court of

Appeals has never reviewed the trial record in this case despite Dodd's steadfast request that he

be given a direct appeal.

Dodd then came to federal court and, pursuant to 28 U.S.C. § 2254, now seeks habeas

relief claiming that he was denied his right to the effective assistance of appellate counsel

because his attorney did not raise any direct appeal issues in the consolidated appeal that he

filed. While I take no issue with the use of a consolidated procedure whereby both direct appeal

and post-conviction appeal issues are raised together, I agree with Dodd that appellate counsel's

misuse of that procedure in this case denied Dodd his right to effective counsel on direct appeal.

Therefore, Dodd's Petition is **GRANTED**.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

Dodd and his co-defendant, Eric Fitzgerald, were involved in an altercation with Jerome

Thomas.  Dodd and Fitzgerald left the scene of the altercation but returned a short while later in

Dodd's car.  Dodd drove slowly past the parked car in which Thomas was seated when shots

rang out.  Thomas was struck in the abdomen and he later died from the gunshot wound.  Several

witnesses testified that the shots came from the car Dodd was driving.  Dodd's co-defendant

testified that although he was present in the car when the shots were fired, it was Dodd who was

the one doing the shooting, not him.

Both Dodd and Fitzgerald were convicted of murder by a jury in a joint trial.  (*See*

Docket 30-3, Findings of Fact ¶ 5.)[1]  Attorney Patrick Young represented Dodd during the trial

and at sentencing where Dodd received sixty years in prison.  (*Id*. ¶ 2, 6.)  Dodd, via appointed

appellate counsel Nathaniel Ruff (now deceased), filed a direct appeal of his conviction on

August 17, 2001.  (Docket 14-2 at 1.)  However, that direct appeal was stayed at Ruff's request

in favor of a procedure that allows a remand to the trial court so that claims of ineffective

---

[1]For clarity, the Court will refer to the docket entries, rather than the titles of the various documents contained in those entries, with paragraph or page citations when necessary.  Where there are attachments or exhibits for the entry, the specific document is denoted by a hyphenated suffix.  The suffix indicates the specific document within the general docket number (*i.e.*, "Docket 30-__"), and is followed by the page or paragraph citation if required.

assistance of counsel can be addressed in the trial court, followed by one consolidated appeal if

the ineffective assistance claim is unsuccessful.  (*See* Docket 30-3, Findings of Fact ¶ 7.)

Here is how that process works: Indiana law allows for the suspension of a direct appeal

in certain circumstances so that an appellant can return to the lower court to pursue post-

conviction review remedies.  This is known as the *Davis/Hatton* procedure, named after the two

cases upon which it is based: *Davis v. State*, 368 N.E.2d 1149 (Ind. 1977) and *Hatton v. State*,

626 N.E.2d 442 (Ind. 1993).  The Court of Appeals of Indiana described the procedure as

follows:

> [It] involves a termination or suspension of a direct appeal already initiated, upon
> appellate counsel's motion for remand or stay, to allow a post-conviction relief
> petition to be pursued in the trial court. . . .  If the appellate court preliminarily
> determines that the motion has sufficient merit, the entire case is remanded for
> consideration of the petition for post-conviction relief. . . .  If, after a full
> evidentiary hearing the post-conviction relief petition is denied, the appeal can be
> reinitiated. . . .  Thus, <u>in addition to the issues initially raised in the direct appeal,</u>
> <u>the issues litigated in the post-conviction relief proceeding can also be raised</u>. . . .
> This way, a full hearing and record on the issue will be included in the appeal. . . .

*Slusher v. State*, 823 N.E.2d 1219, 1222 (Ind. Ct. App. 2005) (citations omitted; emphasis

added).

In early January 2002, Dodd sought permission to return to the trial court to pursue a

petition for post-conviction relief.  (Docket 30-3, Findings of Fact ¶ 7.)  In that motion, Attorney

Ruff told the Indiana Court of Appeals that there were a number of trial errors including an

erroneous denial of a motion to sever; the fact that the defendants were forced into a trial in

which they had to blame one another for the crime; and sufficiency of the evidence due to the

testimony of the State's expert pathologist whose testimony precluded a finding of guilt.  (*See*

Docket 33-2 ¶ 7.)  Nonetheless, Ruff sought to return the case to the trial court to develop an

ineffective assistance of trial counsel claim with the implication being that if he lost, *all* of the appellate issues would be brought in one consolidated appeal.  (*Id.*)  The Indiana Court of Appeals granted Dodd's request and remanded the case to the Lake County Superior Court.  (*See* Docket 30-3, Findings of Fact ¶ 7.)

Dodd filed a petition for post-conviction relief on March 6, 2002, arguing several issues, including ineffective assistance of trial counsel because counsel advised Dodd not to testify in his own defense.  (*See* Docket 30-8 ¶ 8; *see also* Docket 30-3, Findings of Fact ¶ 8.)  The trial court held a hearing on July 18, 2002, where Dodd was represented by attorney Nathaniel Ruff.  (Docket 30-3, Findings of Fact ¶ 9.)  The court denied Dodd's petition on November 1, 2002 after concluding that trial counsel was not ineffective based upon his advice to Dodd regarding testifying.  (*Id.* at pp. 3-4.)  It further found that, because trial counsel was not questioned about the other claims raised in Dodd's Petition, those claims were waived.  (*Id.*, Conclusions of Law ¶ 13.)

Dodd appealed on November 18, 2002.  (Docket 30-9.)  But, significantly, Dodd's counsel did not raise *any* direct appeal issues despite previously telling the court of appeals that there were a number of trial errors ripe for appeal.  Instead, the appeal rested solely on the post-conviction review issue of ineffective assistance of counsel.  (*See* Docket 30-10.)  On June 10, 2003, the Indiana Court of Appeals affirmed the trial court's finding that Dodd's trial counsel was not ineffective when he advised Dodd not to testify during the trial.  (*See* Docket 30-4.)  Dodd then filed a petition to transfer to the Indiana Supreme Court on July 10, 2003.  (Docket 14-5 at 3.)  The Supreme Court denied the petition on August 28, 2003.  (Docket 30-5.)

Dodd then filed a petition for a writ of habeas corpus with this Court on August 16, 2004.

(Docket 3.)  On October 4, he filed a motion for a stay until he exhausted all state court

procedures.  (Docket 6 at 1.)  Specifically, Dodd wished to file a successive petition for post-

conviction relief for ineffective assistance of appellate counsel. (*See id*. at 2.)  This Court granted

his request.  (Docket 7.)

Meanwhile, Dodd had already filed in state court a *pro se* post-conviction relief petition,

alleging ineffective assistance of his appellate/post-conviction counsel (Nathaniel Ruff), on

September 27, 2004.  (Docket 30-18 ¶ 8(a).)[2]  The Court of Appeals declined to authorize the

successive petition, effectively dismissing Dodd's post-conviction claim.  (Docket 30-6.)  He

then filed another successive post-conviction relief petition on December 6, 2004, alleging the

same claims – ineffective assistance of trial and appellate/post-conviction counsel.  (Docket 30-

12 ¶ 8.)  The appellate court again refused to authorize the successive petition.  (Docket 30-7.)

Dodd attempted to exhaust state court procedures one last time – he petitioned the Court

of Appeals for a rehearing regarding its dismissal of his claim of ineffective assistance of trial

and appellate/post-conviction counsel raised in his December 6, 2004 petition.  (Docket 30-19.)

The appellate court denied the petition.  (Docket 9 at 26.)  Dodd took all of these steps on his

own.

On May 27, 2005, Dodd submitted a first amended § 2254 petition to this Court.  (Docket

9.)  On January 5, 2006, I dismissed Dodd's claim of ineffective assistance of trial counsel.

(Docket 24 at 4-8.)  But I reserved ruling on Dodd's claims regarding the ineffective assistance

---

[2]Pursuant to Rule 1, § 12 of the Indiana Rules of Procedure for Post-Conviction
Remedies, the Successive Post-Conviction Relief petition appears to have been filed in the Lake
County Superior Court, but it was actually filed with the Clerk of the Indiana Supreme Court,
Court of Appeals, and Tax Court.  Under Rule 1 § 12(b), the Court of Appeals screens petitions
before they are sent to the lower court.

of appellate counsel.  (*Id*. at 8-10.)  My concern was that Dodd never had a direct appeal of his

conviction in which alleged trial errors – improper joinder, insufficient jury instructions, the

introduction of a co-defendant's statement, and other errors – were reviewed by an appellate

court.  (*Id*. at 9-10.)  Given the convoluted procedural posture of the case as it related to the

claim of ineffective assistance of appellate counsel, I thought that the case needed a "fresh start."

(*Id*. at 10.)  Consequently, I appointed James Golden, Esq. of the firm Kirkland & Ellis, LLP to

represent Dodd in this matter and ordered Dodd to amend his petition.  (*Id*. at 11-12.)

Dodd then filed his Second Amended Petition, (Docket 30), in which he presented two

grounds for the issuance of the writ: (1) ineffective assistance of appellate counsel for failing to

directly appeal Dodd's conviction, (*see id*. ¶ 12, Ground One); and (2) to the extent it could be

considered that appellate counsel actually did appeal Dodd's conviction, ineffective assistance of

appellate counsel for failing to raise significant and obvious issues in that appeal, (*see id*. at ¶ 12,

Ground Two).  Essentially, Dodd claims he was denied effective assistance of appellate counsel

because his appellate counsel failed to raise any of Dodd's direct appeal issues.

In its response to the Second Amended Petition, (Docket 33), the State argues that

appellate counsel was not ineffective for invoking the *Davis/Hatton* procedure, nor was he

ineffective in focusing solely on the post-conviction review issues within that procedure.  (*See*

Docket 33-1 at 1-3.)  In the State's view, Mr. Ruff (the appellate counsel) simply made a

strategic decision regarding the issues he wanted to present.  (*See id*. at 4.)  Regardless, the State

claims, Dodd has not "fairly presented" the ineffective assistance of appellate counsel issue to

the Indiana courts.  (*Id*. at 5.)  As a third position, the State argues that, even if appellate counsel

was ineffective, it would not be cognizable in a federal habeas petition because it would be an

attempt to review the effectiveness of post-conviction counsel. (*Id*. at 7-8.)

I held an oral argument on the matter on October 11.  (Docket 37.)  Having been fully advised of the issues, I now grant Dodd's writ of habeas corpus for the reasons discussed below.

## II.  DISCUSSION

The sole claim remaining is whether Dodd was denied his constitutional right to the effective assistance of counsel on appeal when his appellate counsel failed to raise alleged trial errors after invoking the *Davis/Hatton* procedure.  Before delving into that issue it should be noted what Dodd is *not* arguing.  The State attempts to characterize Dodd's position as follows: that Ruff was somehow ineffective for even choosing to pursue the *Davis/Hatton* procedure in the first place.  (*See* Docket 33-1 at 1-3.)  But this misstates Dodd's position, (*see* Docket 35-1 at 1); this is not a frontal assault on the *Davis/Hatton* procedure itself.  Indeed, the *Davis/Hatton* procedure is sensible inasmuch as it enhances efficiency in an overburdened judicial system.  *See Woods v. State*, 701 N.E.2d 1208, 1219-20 (Ind. 1998).  Rather, Dodd is attacking Mr. Ruff's "misuse[ of] the *Davis/Hatton* procedure."  (*Id*. at 8.)

Thus, there are three distinct issues that I must consider: (1) whether Dodd has fairly presented his claim of ineffective assistance of appellate counsel to the Indiana courts; (2) if he did, what standard should be used to evaluate his claim; and (3) whether Dodd has satisfied that standard.  The Court will address each in turn.

## A.      Fair Presentation/Exhaustion of Remedies

In order for this Court to consider Dodd's petition, Dodd must first exhaust his state court remedies.  *See Simpson v. Battaglia*, 458 F.3d 585, 593 (7th Cir. 2006).  *See also Wilson v. Briley*, 243 F.3d 325, 327 (7th Cir. 2001) ("A habeas petitioner may not resort to federal court

without first giving the state courts a fair opportunity to address his claims and to correct any error of constitutional magnitude.").  In other words, Dodd must have asserted his claim "through one complete round of state-court review, either on direct appeal of his conviction or in post-conviction proceedings," where he "put forward operative facts and controlling legal principles" supporting his theory.  *Simpson*, 458 F.3d at 593 (quotation marks omitted).  However, "[t]he state court need only be given the *opportunity* to decide an issue; it is not necessary that the court explicitly rule on the issue."  *Wallace v. Duckworth*, 778 F.2d 1215, 1223 (7th Cir. 1985) (emphasis in original).

The State contends that Dodd has not fairly presented the issue of ineffective assistance of counsel with respect to his direct appeal.  (*See* Docket 33-1 at 5.)  The State argues that Dodd's failure is two-fold: first, he has "couch[ed] or hid[den] an ineffective assistance of appellate counsel claim in what clearly appears to be an ineffective assistance of post-conviction counsel claim," and second he has "never explained to the state courts his theory as to why a 'reasonable possibility' exists that he is entitled to relief."  (*Id.*)  These defects in Dodd's petitions, the State asserts, caused the Indiana Court of Appeals to deny him post-conviction relief.  (*Id.*)  As a result, the State suggests that I hold this petition in abeyance and allow Dodd to file another application for permission to file a successive post-conviction petition.  (*See id.* at 6-7.)  If the Court chooses this option, the State also offers to support Dodd's application once it is properly filed.  (*Id.*)

The State's argument is difficult to swallow.  Dodd has done everything he could reasonably do to exhaust his state remedies.  Recall that he proceeded *pro se* for much of the time.  And he has navigated the process quite well.  He has done this despite the fact that

8

"[f]ederal habeas corpus happens to be one of the most complex areas of American law."

*Holmes v. Buss*, 506 F.3d 576, 579 (7th Cir. 2007).

Dodd has fairly presented his claim of ineffective assistance of appellate counsel –

repeatedly, in fact.  To begin with, Dodd's September 27, 2004 Petition for Post-Conviction

Relief specifically claimed "ineffective assistance of appellate/post-conviction counsel."

(Docket 30-18 ¶ 8(a).)  The petition lists eleven facts supporting his claim.  (*See id*., Insert for ¶

9.)  That list contains both facts related to his claim of ineffective assistance of trial counsel (*i.e.*,

claims related to his post-conviction review) *and* facts related to his claims regarding defects at

his actual trial (*i.e.*, claims for direct appeal, which would support a claim of ineffective

assistance of appellate counsel).  (*Compare id*., Insert for ¶ 9 at a(1) ("Failing to argue the

ineffective trial counsel issue properly.") *with id*., Insert for ¶ 9 at a(2) ("Failing to argue the

court erroneously allowed joinder for trial of the defendant and co-defendant.").)  This petition

hardly even needs the benefit of liberal construction to find that Dodd has presented his claim to

the Indiana courts.  Nevertheless, his petition was not authorized.  (Docket 30-6.)

Yet Dodd did not stop there.  He returned to the Indiana Court of Appeals and filed a

another petition for post-conviction relief on December 6, 2004.  (Docket 30-12 ¶ 8.)  In that

petition, Dodd again claims both "ineffective assistance of trial counsel" and "ineffective

assistance of appellate counsel."  (*Id*.)  Dodd again lists the facts supporting his claim – this time

separating them into the two ineffective assistance claims.  (*Id*., Insert for ¶ 9 at 9a-9b.)  Indeed,

Dodd even specifically states that "[a]ppellant [sic] counsel was ineffective for failing to review

trial record in an attempt to discover other issue's [sic] that should have been raised on direct

appeal."  (*Id*., Insert for ¶ 9 at 9b(1).)  As with the September petition, Dodd clearly set forth his

argument with respect to ineffective assistance of appellate counsel.  And, as with the September

petition, the Indiana Court of Appeals declined to authorize the December petition.  (Docket 30-

7.)

Undeterred, Dodd soldiered on.  He filed a Petition for Rehearing of the order denying

his December petition.  (Docket 30-19.)  Again Dodd separates his arguments into claims related

to his post-conviction review and claims related to his direct appeal counsel.  (*See id*. at 1-2

(listing in the Statement of the Issue(s) for Rehearing "whether appellate counsel, Nathaniel

Ruff, was ineffective for not reviewing the trial record in an attempt to discover other errors in

[sic] which should have been presented on direct appeal.")  Within his brief, Dodd argues that

his appellate counsel "did not preserve all of [the trial court] errors claimed here," and

specifically notes that Ruff "<u>chose to elect to proceed on one error</u>, failure of right to testify, <u>and

then to abandon all other errors at the same time</u>."  (*Id*. at 10 (emphasis added).)  Dodd then

asserts that Ruff's conduct amounted to ineffective assistance of appellate counsel in violation of

"the due process clause of the Fourteenth Amendment of the U.S. Constitution that guarantees

[sic] every criminal defendant the right to effective counsel on appeal."  (*Id*. (citing "<u>Evitts v.

Lucey,</u> (1985), 105 S. Ct. 830").)  Even if Dodd's prior petitions had been deficient, the Petition

for Rehearing clearly establishes both the factual and legal basis for his ineffective assistance of

appellate counsel claim.  Yet it, too, was denied.  (Docket 9 at 26.)

To the extent that Dodd's petition is muddled because of his reference to both post-

conviction counsel and appellate counsel, that should not have prevented the Indiana courts from

examining Dodd's claims with respect to the failure to pursue a direct appeal.  In fact, based on

the Court's understanding of the *Davis/Hatton* procedure, Dodd is technically correct.  Ruff was

serving in two roles – *both* as Dodd's post-conviction review counsel and his direct appeal

counsel.  (*See* Docket 33-1 at 7 ("the defendant's counsel is operating as both direct appeal and

post-conviction counsel at the same time").)

In sum, Dodd has put forward the operative facts and controlling legal principles related

to his ineffective assistance of appellate counsel claim, *see Simpson*, 458 F.3d at 593, and the

state courts have certainly had the opportunity to decide the issue, *see Wallace*, 778 F.2d at

1223.  Dodd has done all that is required of him at this stage.  On no less than three occasions he

has tried to present his claim of ineffective assistance of appellate counsel to the Indiana Court of

Appeals and on each occasion he has been rebuffed.  Dodd has fairly presented his claim to the

Indiana courts and therefore he is not procedurally defaulted.

**B.       Standard of Review**

The Court must next consider the appropriate standard under which to analyze this case.

While there is no dispute that a state criminal defendant is entitled, by the Sixth Amendment via

the Fourteenth Amendment, to the effective assistance of counsel at both trial and appeal, *see*

*Mason v. Hanks*, 97 F.3d 887, 892 (7th Cir. 1996), there is a dispute regarding how to evaluate

Dodd's claim that he was denied that right when his counsel abandoned all of his direct appeal

issues in the *Davis/Hatton* appeal.  Dodd contends that he was denied any meaningful appeal and

therefore his counsel's deficient performance should be presumptively prejudicial.  (*See* Docket

30-1, Insert 6-A at 4.)  The State counters that Ruff simply made a strategic decision which

"should be evaluated under the typical ineffective assistance of counsel standards."  (Docket 33-

1 at 4 (citing *Lee v. Davis*, 328 F.3d 896, 900 (7th Cir. 2003)).)  Further, the State

> believes that it is illogical to require counsel on appeal in a *Davis/Hatton*
> procedure to raise a 'direct appeal issue' just because the defendant was entitled

11

> to a direct appeal, even if that issue is not stronger than the 'post-conviction
> issue.'  It is well understood among appellate practitioners that the best strategy is
> to limit the issues presented on appeal to the strongest available and not to detract
> from those issues by also raising lesser claims.

(*Id.*)  The State's contention that appellate counsel should not be required to raise direct appeal

issues in the *Davis/Hatton* appeal "just because the defendant was entitled to a direct appeal" is

the critical dispute in the case.

When a criminal defendant is effectively denied any direct appeal because of his

counsel's deficient performance, the petitioner is entitled to a new appeal without further

analysis of prejudice and without a showing that the appeal has merit.  As the Supreme Court

stated in *Peguero v. United States*, 526 U.S. 23, 28 (1999), "[w]hen counsel fails to file a

requested appeal, a defendant is entitled to [a new] appeal without showing that his appeal would

likely have merit."  Hence, there is a presumption of prejudice if an appeal is requested by the

defendant but never pursued by the attorney.  *Roe v. Flores-Ortega*, 528 U.S. 470, 483 (2000).

This is because such inaction amounts to a "denial of the entire judicial proceeding itself . . .

[which] demands a presumption of prejudice.  Put simply, we cannot accord any presumption of

reliability . . . to judicial proceedings that never took place."  *Id.*  (quotation marks and citations

omitted).  *See also Penson v. Ohio*, 488 U.S. 75, 86-88 (1988) (holding that there is a

presumption of prejudice where an attorney fails to appeal unless the procedures of *Anders v.*

*California*, 386 U.S. 738 (1967), are followed);  *Evitts v. Lucey*, 469 U.S. 387, 395 (1985) (in

affirming the constitutional right to the effective assistance of appellate counsel on direct appeal,

noting that "the guarantee of counsel cannot be satisfied by mere formal appointment . . . [t]hat a

person who happens to be a lawyer is present alongside the accused . . . is not enough to satisfy

the constitutional command").  As the Seventh Circuit has put it, "[i]f the defendant told his

12

lawyer to appeal, and the lawyer dropped the ball, then the defendant has been deprived, not of effective assistance of counsel, but of *any* assistance of counsel on appeal.  Abandonment is a *per se* violation of the sixth amendment." *Castellanos v. United States*, 26 F.3d 717, 718 (7th Cir. 1994) (emphasis in original).

But if this is, as the State claims, simply a case of Ruff strategically raising only certain issues on appeal, then it is not presumptively prejudicial.  *See Kitchen v. United States*, 227 F.3d 1014, 1021 (7th Cir. 2000) (noting that where counsel filed and argued the appeal, but chose not to raise a specific issue, "a defendant must demonstrate prejudice by showing that the omitted issue may have resulted in a reversal of the conviction, or an order for a new trial") (quotation marks omitted).  *See also Mason*, 97 F.3d at 893 ("When a claim of ineffective assistance of counsel is based on failure to raise viable issues, the district court must examine the trial court record to determine whether appellate counsel failed to present significant and obvious issues on appeal.").

The question here is whether Ruff's decision to jettison all of Dodd's direct appeal issues and only present the post-conviction review issues to the Indiana Court of Appeals during the *Davis/Hatton* appeal is *per se* ineffective.  I find that it is in circumstances like this one, where the defendant plainly asks for a direct appeal (more on that in a moment) and the lawyer ignores the request.

As noted above, the *Davis/Hatton* procedure allows a convicted defendant to terminate his direct appeal, pursue post-conviction review, and if the post-conviction review is unsuccessful join appealable issues from the post-conviction review and the direct appeal in a consolidated appeal.  *See Slusher*, 823 N.E.2d at 1222.  But as the Indiana Rules of Procedure for

13

Post-Conviction Remedies make clear, the post-conviction review process "is not a substitute for a direct appeal from the conviction." Ind. R. of Pro. for Post-Conviction Remedies § 1(b). The corollary to that point is that the appeal from the denial of a post-conviction relief petition is not a substitute for the appeal from the trial itself. The State basically acknowledges as much in its Response. (*See* Docket 33-1 at 7 ("In appeals following *Davis/Hatton* proceedings, Indiana courts treat claims that could have been raised on direct appeal as such and reviews claims raised in the post-conviction petition as claims on appeal from the denial of post-conviction relief.") (citing *Boesch v. State*, 778 N.E.2d 1276, 1279-84 (Ind. 2003)).)

Thus, when a defendant invokes the *Davis/Hatton* procedure, there are two appeals at play, although they are consolidated for reasons of efficiency. *See, e.g.*, *Boesch*, 778 N.E.2d at 1278; *Wentz v. State*, 766 N.E.2d 351, 356 (Ind. 2002); *Slusher*, 823 N.E.2d at 1222; *Moffitt v. State*, 817 N.E.2d 239, 243 n. 4 (Ind. Ct. App. 2004). A review of the above cited cases proves that point. In *Moffitt*, for example, the court first analyzed the "Direct Appeal" issues, 817 N.E.2d at 245, and then took up the "Post Conviction Appeal," *id.* at 248. Each appeal was analyzed under the prevailing standard applicable to that particular appeal. Likewise, in *Boesch*, the court first considered the defendant's "direct appeal." 778 N.E.2d at 1279. Then, after rejecting the direct appeal issues, the court "turn[ed] to his appeal from the denial of post-conviction relief." *Id.* at 1280. The point is that, in these cases, the defendant had *both* a direct appeal and an appeal from the denial of his PCR. They were simply consolidated in the same proceeding.

Because the direct appeal and the post-conviction appeal are separate, albeit consolidated for efficiency, each retains its own unique characteristics. And while a defendant does not have

14

a constitutional right to the effective assistance of counsel on post-conviction review, *see*

*Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987), he does have a right to a direct appeal of his

criminal conviction, and a constitutional right to the effective assistance of counsel on that direct

appeal, *see Mason*, 97 F.3d at 892.  Appellate counsel's failure "to show up for appeal–which

can occur either if the lawyer fails to initiate the appeal or if the lawyer fails to prosecute the

appeal," *Castellanos*, 26 F.3d at 719, denies the defendant "of more than a *fair* judicial

proceeding," it deprives him "of the appellate proceeding altogether," *Flores-Ortega*, 528 U.S. at

483 (emphasis in original).

     Dodd never had a direct appeal of his conviction, and consequently no appellate court has

*ever* reviewed the trial record in this case.  Under these circumstances, this amounts to *per se*

ineffective assistance of appellate counsel.  True, Ruff did pursue the post-conviction review

appeal and possibly even made a strategic decision regarding which issues to raise in that appeal.

Yet just because the process is consolidated for efficiency does not mean that counsel can wholly

ignore a defendant's request to raise direct appeal issues.  But that is precisely what appears to

have happened here.  Therefore, according to Dodd, this is a case where "no one has looked at

the record with an advocate's eye," *Kitchen*, 227 F.3d at 1021 (quotation marks and brackets

omitted), because Ruff refused to even review the trial record in search of direct appeal issues,

(*see, e.g.*, Docket 30-12, Insert for ¶ 4 ("Mr. Ruff believed that because of the significance of

trial counsel error's [sic] there was no need for him to review the record in an attempt to identify

any other issue's [sic] to raise on my Direct Appeal.").)

     What makes Ruff's decision to forgo all direct appeal issues even more troubling is what

he told the Indiana Court of Appeals when he invoked the *Davis/Hatton* procedure.  In his

15

motion, Ruff told the court of appeals that Dodd had preserved several viable trial errors,

implying that they would be raised later on should the ineffective assistance of counsel claim not

be successful.  (*See* Docket 33-2 ¶ 7.)  For example, Ruff advised the court of appeals that the

trial court "erroneously denied the motion of both co-Defendants for separate trials."  (*Id*. ¶

7(B).)  Ruff also represented to the court of appeals that the trial court put the defendants in an

impossible position by setting up a situation where they were forced to "blame [one another] for

the crime."  (*Id*.)  Ruff also told the court of appeals that Dodd had "an argument that as a matter

of fact the testimony [of the] State's expert witness, the pathologist, precluded the crime being

committed by either co-Defendant."  (*Id*. ¶ 7(C).)  Yet when he finally appealed after losing in

the trial court on the ineffective assistance claim, Ruff never raised the trial errors he previously

said had merit.

The decision to jettison <u>all</u> direct appeal issues cannot be analyzed simply as a strategic

decision, because it is a decision that robs the defendant of important constitutional rights.

Because a defendant has a right to a direct appeal, such a decision would require, at a minimum,

something akin to an *Anders* showing.  *See Nunez v. United States*, 495 F.3d 544, 547-48 (7th

Cir. 2007).  *See also Penson*, 488 U.S. at 83-84.  But Ruff did not even do that.

Thus, this case should be analyzed under the *per se* standard.  If Dodd can demonstrate

that he instructed his counsel to pursue a direct appeal and counsel failed to do so, Dodd is

entitled to a new appeal.

**C.     The Merits of Dodd's Claim**

There can be no doubt that Dodd desired a direct appeal and instructed his counsel

accordingly.  On July 25, 2001 Dodd sent a letter to Judge Murray, the trial judge, stating that "I

'<u>did</u>' indeed inform you during sentencing that I would like to appeal." (Docket 30-13 at 1

(emphasis in original).)  Then, two days later, Dodd sent another letter to Judge Murray wherein

he said that "you asked me did I wanted [sic] to appeal this conviction of murder . . . .  And I said

yes I do!" (Docket 30-14 at 1.)  That same day, he also wrote to Ruff.  In that letter he noted that

there is a thirty day time limit to file appeals and he wanted "to make sure that you will indeed

file a motion" and closed by stating "so please stay in contact with appellant Mr. Dodd, and

please make sure that you file that motion of appeals [sic] in a timely manner. " (Docket 30-15 at

1.)  Then, on August 2, 2001 Dodd wrote to Ruff again and stated that "[t]his letter is to

specifically state and to address 'the issue's [sic] that I want you to bring/and to address on my

Direct Appeal." (Docket 30-16 at 1.)  Dodd then listed the issues that he wanted Ruff to address

"on [his] Direct Appeal." (*Id*. at 1-3.)

     The bottom line is that no appellate court (and if one believes Dodd, no appellate lawyer)

has reviewed the record in this case to ascertain whether there were any trial errors  – despite

Dodd's repeated requests, as is his right, that such a review be undertaken.   Dodd was therefore

denied the effective assistance of appellate counsel in violation of the Sixth and Fourteenth

Amendments to the United States Constitution.  *See Flores-Ortega*, 528 U.S. at 484 ("when

counsel's constitutionally deficient performance deprives a defendant of an appeal that he would

otherwise have taken, the defendant has made out a successful ineffective assistance of counsel

claim entitling him to an appeal").  *See also Penson*, 488 U.S. at 88; *Evitts*, 469 U.S. at 399-400;

*Castellanos*, 26 F.3d at 718-19.  Therefore, the remedy is for Dodd to be provided a direct

appeal, and the State will be given time to effectuate that result.  *See Gilmore v. Bertrand*, 301

F.3d 581, 582-83 (7th Cir. 2002) (noting that "federal courts may delay the release of a

successful habeas petitioner in order to provide the State an opportunity to correct the

constitutional violation found by the court") (quotation marks omitted).

### III.  CONCLUSION

Accordingly, Petitioner Jermaine Dodd's Amended Petition for Writ of Habeas Corpus

[DE30] is **GRANTED**.  The State of Indiana is hereby **ORDERED** to allow Dodd to file a

Notice of Appeal pursuant to Indiana Rule of Appellate Procedure 9(A)(1) within sixty (60) days

of this Order and, if he does so, provide him a direct appeal pursuant to the applicable Indiana

Rules of Appellate Procedure.  Should the State fail to comply with this Order, Petitioner

Jermaine Dodd is **ORDERED** to be **RELEASED**.

**SO ORDERED.**

ENTERED: January 3, 2008

s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT

18